UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| **Raytheon Company,** </br></br>                 Plaintiff. </br> v. </br></br> **William Rebarick,** </br></br>                 Defendant. | Case No. 6:18-cv-1308-RBD-DCI |

## NON-PARTY LOCKHEED MARTIN CORPORATION'S
## MOTION TO QUASH RULE 45 SUBPOENA
## OR IN THE ALTERNATIVE MOTION FOR PROTECTIVE ORDER

Pursuant to Fed. R. Civ. P. 45(d) and/or 26(c), and D.C. Local Rule 7 and M.D. Fla. Local Rule 3.01, Non-Party Lockheed Martin Corporation ("Lockheed Martin") respectfully moves this Court for entry of an order quashing a Subpoena to Testify at a Deposition in a Civil Action for testimony and for the production of documents (the "Subpoena"). The Subpoena was served on November 6, 2018 by Raytheon Company ("Raytheon") in the action *Raytheon Company v. William Rebarick*, Case No. 6:18-cv-01308-RBD-DCI, pending in the Middle District of Florida (the "Action"). In addition to quashing the Subpoena, or in the alternative, the Court should issue a Protective Order under Federal Rule 26 ordering that Lockheed Martin not be required to respond to any of the Subpoena document requests or deposition topics.

Pursuant to D.C. Local Rule 7(m) and M.D. Fla. Local Rule 3.01(g), counsel for Lockheed Martin conferred with counsel for Raytheon via email on November 15 and 16, 2018 and via telephone call on November 20, 2018. Counsel for Raytheon stated that Raytheon does not consent to the relief requested in this Motion. In support of this Motion, Lockheed Martin states as follows. A proposed order is attached.

## I. INTRODUCTION

Non-Party Lockheed Martin respectfully moves this Court for entry of an order quashing the Subpoena. Exhibit A (the "Subpoena"). The Subpoena was served on November 6, 2018 by Raytheon in the Action in the Middle District of Florida, where Raytheon alleges that Mr. Rebarick, a former Raytheon employee, misappropriated allegedly confidential Raytheon documents. Exhibit B, First Amended Complaint (Aug. 13, 2018) (the "Complaint" or "Compl.").

As detailed below, quashing the Subpoena is appropriate for several reasons: the topics are overbroad and not relevant to Raytheon's asserted claims; the Subpoena is premature, as Raytheon has not even received any discovery from the actual Defendant (Mr. Rebarick); and the extensive nature of the requests would cause Lockheed Martin to undergo significant expense.

Raytheon and Lockheed Martin are competitors. Lockheed Martin recently won an Army contract (the "ATMP" program) that had previously been performed by Raytheon (as the "Warfighter" program). Raytheon instituted a bid protest challenging that award to Lockheed Martin. Raytheon lost that bid protest.

Raytheon does not accuse or allege Lockheed Martin of any wrongdoing in the Complaint. The Action against Mr. Rebarick relates to Raytheon information that Mr. Rebarick allegedly took while employed by Raytheon and had those files when he subsequently worked for Lockheed Martin. As the Complaint states, Mr. Rebarick left Lockheed Martin when Lockheed Martin discovered his activities. Unstated in the Complaint is the fact that Lockheed Martin also voluntarily provided to Raytheon tens of thousands of pages of documents with the

information that Mr. Rebarick took from Raytheon and, unknown to Lockheed Martin, brought to Lockheed Martin. This production started in late 2016 and finished in mid-2017.[1]

The Subpoena ignores these facts and demands a wide ranging scope of information, much of which relates to the ATMP contract award to Lockheed Martin. Thus, the Subpoena is nothing more than a brazen attempt to obtain competitive information from a third party. From the Subpoena, it is clear that Raytheon is attempting to relitigate its failed bid protest in a different forum, or to ultimately bring a complaint against Lockheed Martin.

This is not a situation where a party needs information from a third party to perfect its claims, for Raytheon has not yet received any discovery from Mr. Rebarick (and apparently has just propounded discovery on the actual party to the case). In addition, Lockheed Martin has already provided Raytheon with a large amount of information. Rather than evaluating the information that *has* been provided, Raytheon instead is attempting to game the system and engage in a "fishing expedition" for information that can be used against Lockheed Martin.

Upon receipt of the Subpoena, Lockheed Martin's counsel asked, as a common, professional courtesy, for a two-week extension in which to address the Subpoena. This extension would have placed the return date roughly three weeks before the deposition and document production was scheduled to occur. Raytheon refused the extension request unless Lockheed Martin would commit to filing substantive responses, not filing any motion to quash or for a Protective Order, or not otherwise objecting to the Subpoena. The fact that Raytheon has not yet received any discovery from the Defendant, and that it already has tens of thousands of pages of documents, yet is unwilling to provide a third party with a reasonable extension,

---

[1] During the meet and confer process, Raytheon's counsel stated that Mr. Rebarick indicated that Mr. Rebarick does not have any documents in his possession. Raytheon's counsel also confirmed that Raytheon has the documents Lockheed Martin previously provided to Raytheon.

demonstrates that Raytheon is not interested in any information related to Mr. Rebarick unless it can also serve as the basis for a new lawsuit against Lockheed Martin.

This use of the Subpoena process is entirely improper, and Lockheed Martin thus asks this Court to grant its motion to quash and/or enter a Protective Order preventing Raytheon from obtaining any testimony or documents. The Subpoena is attached hereto as Exhibit A.

## II. RELEVANT FACTUAL BACKGROUND

As evidenced by the Complaint, the Action involves Raytheon's claims that Mr. Rebarick breached his Raytheon employment agreement and misappropriated Raytheon information. *See* Ex. B, Compl. at ¶¶ 52-82. Lockheed Martin is not a party to the Action.

Lockheed Martin hired Mr. Rebarick after he departed from Raytheon. While he was employed by Lockheed Martin, another Lockheed Martin employee saw Mr. Rebarick with a document labeled "Raytheon Proprietary" on his Lockheed Martin company computer. That employee immediately reported the incident to Lockheed Martin's internal ethics department, which promptly launched an investigation into the matter and placed Mr. Rebarick on administrative leave. Mr. Rebarick resigned from Lockheed Martin shortly after Lockheed Martin's actions. *See* Ex. B, Compl. at ¶¶ 38-40.

Shortly thereafter, Lockheed Martin informed Raytheon of Mr. Rebarick's actions, stated that these actions violated Lockheed Martin's policies, and indicated that Mr. Rebarick had left Lockheed Martin. Lockheed Martin's correspondence with Raytheon is attached to this Motion as Exhibit C.

After several additional rounds of correspondence, including letters from Raytheon to Lockheed Martin on December 2 and 12, 2016, and a telephone call between Raytheon and Lockheed Martin on December 7, 2016, on December 13, 2016, Lockheed Martin sent another letter to Raytheon confirming that Lockheed Martin had already taken steps to "isolate, contain,

and firewall" any Raytheon information that Mr. Rebarick may have had at Lockheed Martin. Lockheed Martin also disclosed to Raytheon that it had retained outside legal counsel in an effort to produce documents that may have contained Raytheon confidential information to Raytheon as quickly as possible. Lockheed Martin's correspondence to Raytheon is attached to this Motion as Exhibit D.

On December 16, 2016, Lockheed Martin, through its outside counsel, voluntarily produced documents from Mr. Rebarick that appeared to contain Raytheon information. In the ensuing months, Lockheed Martin produced tens of thousands of pages of material that its outside counsel identified in its Rebarick-related investigation. Lockheed Martin's outside counsel also discussed with Raytheon's counsel a methodology to identify documents from Mr. Rebarick that appeared to have been obtained during Mr. Rebarick's employment with another former employer, Cubic Corporation. Lockheed Martin subsequently produced approximately 10,000 pages of Cubic documents that may have included Raytheon information. A copy of the email communications between counsel for Lockheed Martin and counsel for Raytheon is attached to this Motion as Exhibit E. Lockheed Martin produced documents to Raytheon from December 2016 to May 2017.

Raytheon filed a lawsuit against Mr. Rebarick in August 2018 – over eighteen months after Lockheed informed Raytheon of Mr. Rebarick's activities, and over a year after Lockheed completed its voluntary return of documents to Raytheon. The lawsuit does not name Lockheed Martin as a co-defendant. The lawsuit also does not accuse Lockheed Martin of any wrongdoing. None of Raytheon's claims relate to Lockheed Martin.

Based on the docket from the Action, it appears that discovery has just begun. The parties also have not finalized a protective order for the case. The Subpoena demands

compliance at Raytheon's outside counsel's offices in Washington, D.C. It includes seventeen (17) requests for various document categories, and seven (7) topics for deposition testimony. *See* Ex. A.

### III.  QUASHING THE SUBPOENA IS WARRANTED

Fed. R. Civ. 45 requires that a court must modify or quash a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). "In balancing the interests served by demanding compliance, courts should consider relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3 (D.D.C. 2017) (internal marks and citations omitted). Generally, an entity's status as a non-party is a factor that weighs *against* disclosure. *See Dig. Assurance Certification, LLC v. Pendolino*, No. 6:17-CV-72, 2017 WL 4342316, at *9 (M.D. Fla. Sept. 29, 2017). Indeed, a court has the discretion to limit discovery to prevent undue burden on third parties even if the requested discovery is strictly within the limits of Rules 26 and 45. *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012). A court also may quash or modify a subpoena that requires, "disclosing a trade secret or other confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(d)(i).

#### A.  The Subpoena is Overbroad and Seeks Irrelevant Matters

Quashing the Subpoena is appropriate given the undue burden imposed on Lockheed Martin. As stated above, none of the Document Requests or Deposition Topics pass the relevancy threshold or the proportionality requirement. As an initial matter, the district court must "first consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation…." *BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). "Although Rule 45 does not identify irrelevance or overbreadth as grounds for

6

quashing a subpoena, courts treat the scope of discovery under a subpoena the same as the scope of discovery under Rule 26." *TYR Tactical, LLC v. Protective Prod. Enterprises, LLC*, No. 15-CV-61741, 2016 WL 10647314, at *2 (S.D. Fla. Mar. 8, 2016). Rule 26 requires that a subpoena's requests be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Simply put, the discovery rules do not permit a party to go on a fishing expedition. *See Bingham v. Sys.*, No. 8:14-CV-73, 2016 WL 4467213, at *1 (M.D. Fla. Aug. 24, 2016); *see also Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006). The only information that is reasonably related to Raytheon's claims is the set of Raytheon information that Mr. Rebarick took from Raytheon to Lockheed Martin. Those documents, however, have already been provided to Raytheon, thus eliminating any need for the Subpoena.

The clear language of the Subpoena topics demonstrates their overbreadth and their irrelevance. The information sought by Raytheon's Subpoena goes well beyond what is required for the Action. As demonstrated below, it represents a wide-ranging attempt to obtain information regarding Raytheon's loss of the ATMP contract. As such, the Subpoena is overbroad, not relevant, duplicative, and premature. For example:

1.  Document Requests 1-4 and Deposition Topics 1 and 5 seek information related to Lockheed Martin's hiring of Mr. Rebarick, including his "personnel file," and his work experience.

> <u>Request 1</u>: All documents and communications relating to Your hiring of Defendant in 2014. This Request includes, but is not limited to, all documents submitted by and communications with Defendant, as well as all internal discussions of Defendant's qualifications and/or experience.
>
> <u>Request 2</u>: Defendant's personnel file or similar human-resources file.
>
> <u>Request 3</u>: All of Defendant's performance reviews, self-evaluations, or similar performance assessments.

7

> Request 4: Documents sufficient to identify the projects Defendant worked on, and team members Defendant worked with, while under Your employ.
>
> Topic 1: Details regarding Defendant's work experience with Lockheed. This includes details surrounding Your hiring of Defendant, Defendant's personnel file, projects Defendant worked on for Lockheed, Defendant's roles and responsibilities on the ATMP and other WFF/ATMP-related projects, and individuals who worked with or supervised Defendant on the ATMP and other WFF/ATMP-related projects. For the avoidance of doubt, this topic is intended to cover the period while Defendant was employed by Cubic and/or PULAU and worked as a contractor for Lockheed, as well as the period during which You employed Defendant.
>
> Topic 5: Details surrounding Defendant's departure from Your organization. This includes but is not limited to the events that precipitated his departure, Defendant's attempts to conceal his possession of Raytheon's confidential or proprietary information, Defendant's resignation, and any efforts you undertook to understand the scope or impact of Defendant's possession of Raytheon's confidential or proprietary information.

These types of documents have no bearing on Raytheon's claims against Mr. Rebarick. The pertinent issue for Raytheon's claims is Mr. Rebarick's alleged breach of duties owed to Raytheon. There is simply no plausible basis that Raytheon could articulate to convince this Court that it requires Lockheed Martin's confidential and proprietary performance reviews or self-evaluations for Raytheon's suit against Raytheon's former employee. Similarly, Mr. Rebarick's work experience at Lockheed Martin has no bearing on what information he may have taken from Raytheon.

    2.     Document Requests 5-6 and Deposition Topic 7 seek information on Lockheed Martin's policies to protect proprietary information.

> Request 5: Documents sufficient to show Your policies on the possession or use of third-party proprietary information, whether or not relating to a previous employer, that were applicable between 2009 and 2016.

8

> Request 6: All documents regarding any training that Defendant attended or completed that relate to the possession or use of third-party proprietary information.
>
> Topic 7: Your policies relating to possession and use of third-party proprietary information, including any relevant employee education or training.

This also is utterly irrelevant to any claim; Raytheon's trade secret claim requires a showing that Raytheon, not Lockheed Martin, had adequate protection policies.

3. Document Request 7 is overbroad.

> Request 7: All documents and communications relating to (1) documents or information that Defendant possessed or accessed during Defendant's employment with Raytheon, and (2) knowledge or experience that Defendant attained or received during Defendant's employment with Raytheon.

To the extent it seeks the Raytheon information that Mr. Rebarick had in his possession while he was employed by Lockheed Martin, those documents have already been produced. Raytheon has made no distinction as to what else it may need for its claims.

4. Document Requests 8-10 and 15-16, and Deposition Topics 1-4 represent the aforementioned "fishing expedition" into Lockheed Martin's successful proposal for the Army training contract.

> Request 8: All documents relating to the WFF or ATMP programs that mention, concern or otherwise reference Raytheon, or contain Raytheon information. This Request includes, but is not limited to, documents marked with disseminating restrictions such as "Raytheon Confidential," "Raytheon Most Private," "Raytheon Proprietary," "Raytheon Competition Sensitive," or "Raytheon Internal Use Only."
>
> Request 9: All communications to or from Defendant that that concern WFF, ATMP, Defendant's employment by Raytheon, or information Defendant obtained while employed by Raytheon. For the avoidance of doubt, this Request includes any communications that copied (cc) or blind-copied (bcc) Defendant, and any forwarded or attached emails, regardless of format.

9

Request 10: All documents authored by Defendant that concern WFF, ATMP, Defendant's employment with Raytheon, or information Defendant obtained while employed by Raytheon.

Request 15: All communications between You and the United States Army or any other government entity relating to Defendant's use of, or access to, Raytheon's confidential and/or proprietary information.

Request 16: All communications regarding any Adverse Information Report relating to Defendant that You submitted to the Defense Security Service or any other government entity.

Topic 1: Details regarding Defendant's work experience with Lockheed. This includes details surrounding Your hiring of Defendant, Defendant's personnel file, projects Defendant worked on for Lockheed, Defendant's roles and responsibilities on the ATMP and other WFF/ATMP-related projects, and individuals who worked with or supervised Defendant on the ATMP and other WFF/ATMP-related projects. For the avoidance of doubt, this topic is intended to cover the period while Defendant was employed by Cubic and/or PULAU and worked as a contractor for Lockheed, as well as the period during which You employed Defendant.

Topic 2: Details of Your recruitment process for the staffing of the ATMP proposal and other WFF/ATMP-related projects.

Topic 3: Details regarding your relationship with Cubic and PULAU with respect to the ATMP proposal and other WFF/ATMP-related projects.

Topic 4: Details regarding Your knowledge of Defendant's access to Raytheon's confidential and/or proprietary information. This includes, but is not limited to, details regarding who at Lockheed (or its sub-contractors, partners, or other associated entities) was aware that Defendant possessed Raytheon's confidential and/or proprietary documents and information, when and under what circumstances those individuals gained this knowledge, the actions these individuals took upon learning of this information, and whether and how any of these individuals used this information in their work on the ATMP or other WFF/ATMP-related proposals.

These topics are utterly irrelevant to Raytheon's case against Mr. Rebarick, and can only represent an attempt by Raytheon to use this Action (against Mr. Rebarick) to generate a basis

for a lawsuit against Lockheed Martin. Request 8 is particularly egregious – it requests all documents related to the ATMP contract or the Warfighter program that may contain any reference to Raytheon, the contractor that performed the Warfighter program. Producing documents in response to Request 8 would require years of data for any Lockheed Martin employee that worked on or referenced either contract. That is far too burdensome for a non-party.

     5.     Document Request 11 and Deposition Topics 5 and 6 seek information regarding Mr. Rebarick's departure from Lockheed Martin.

> Request 11: All documents and/or communications relating to Defendant's departure from Lockheed Martin, including but not limited to documents or communications regarding the events that precipitated his departure, Defendant's actions relating to his possession, use, or dissemination of Raytheon's confidential or proprietary information (including any attempts to conceal his possession thereof), Defendant's resignation, and any efforts you undertook to understand the scope or impact of Defendant's actions relating to his possession of Raytheon's confidential or proprietary information.
>
> Topic 5: Details surrounding Defendant's departure from Your organization. This includes but is not limited to the events that precipitated his departure, Defendant's attempts to conceal his possession of Raytheon's confidential or proprietary information, Defendant's resignation, and any efforts you undertook to understand the scope or impact of Defendant's possession of Raytheon's confidential or proprietary information.
>
> Topic 6: Your digital data retention policies and data recovery capabilities, including data retention policies as they relate to employee actions on Your network and devices and Your ability to use digital forensics to recover digital files.

Lockheed Martin has already provided this information in correspondence from 2016 and 2017. *See* Exhibit E. Moreover, this information is not related to any of Raytheon's claims, as Raytheon has not accused Lockheed Martin of any wrongdoing.

11

6.	Document Requests 12 (browsing history) and 17 (Jennifer Joy) have no demonstrated or obvious basis to any Raytheon claim, and nothing related to browsing or Ms. Joy is referenced or implied in Raytheon's Complaint.

> Request 12: Documents sufficient to show Defendant's website browsing history while employed by You. This includes, but is not limited to, Defendant's website browsing history from any Lockheed-owned devices issued to Defendant and Defendant's website browsing history while connected to Your network.
>
> Request 17: All documents relating to or concerning Jennifer Joy.

7.	Document Requests 13 are 14 relate to third parties who also hired Mr. Rebarick.

> Request 13: All documents and communications between You and the Cubic Corporation that concern Defendant.
>
> Request 14: All documents and communications between You and PULAU that concern Defendant.

Raytheon has provided no information as to why it needs this information from Lockheed Martin, nor why it cannot obtain any of the information it seeks from Mr. Rebarick (or those third parties directly).

**B.	The Subpoena is Premature**

In addition to being overbroad, irrelevant, and burdensome, the Subpoena should be quashed because it is premature. Rule 26 requires a party to request discovery from the least burdensome source. *See* Fed. R. Civ. P. 26(b)(2)(c) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."). Here, Raytheon apparently has not even attempted to get the demanded discovery from Mr. Rebarick any other source – let alone the least burdensome source. Discovery has not yet begun in the underlying Middle District of Florida litigation. There is no agreed-to protective

order and the discovery requests propounded by Raytheon to Mr. Rebarick do not have a deadline to respond until December 3, 2018. Simply put, Raytheon's Subpoena at this stage in the discovery is premature. Raytheon cannot provide any reason as to why it needs any information from Lockheed Martin at this time, especially given Lockheed Martin's prior voluntary production. This is particularly true because Mr. Rebarick has challenged whether *any* Raytheon information he may possess is proprietary, due to its age and other factors. *See* Exhibit F, Rebarick's Answer and Affirmative Defenses (Oct. 1, 2018), at 17-18.

### C. The Subpoena is Overly Burdensome and Seeks Proprietary Information

Quashing the Subpoena is appropriate to protect Lockheed Martin from the expense and burden of producing information before Raytheon has even exhausted its ability to obtain information for its case from other sources.

The Subpoena demands information from May 2009 to present – i.e., nearly a decade worth of internal Lockheed Martin confidential and proprietary information for a lawsuit in which Lockheed Martin is not a party. *See* Ex. A at 5. Responding to the Subpoena would require Lockheed Martin to collect and review a massive amount of information from many custodians about a very large proposal effort that lasted many months. The Subpoena's requests are not narrowly tailored and seek vast amounts of information from a direct competitor spanning the course of nearly a decade. This Court should not allow Raytheon to flout the discovery rules with its Subpoena.

The Subpoena also would require that Lockheed Martin produce its own proprietary information. The types of information that Raytheon seeks include confidential Lockheed Martin policies and procedures. They also include a wide-swath of information related to Lockheed Martin's proposal to the Army for the ATMP contract, which is proprietary and highly confidential. Rule 45 requires that a party demonstrate "substantial need" for a non-party's

13

confidential, proprietary, or trade secret information. Here, Raytheon has made no such showing. This is particularly true given that Lockheed Martin and Raytheon are competitors. Giving Raytheon free rein into a wide swath of requested information is improper.

### IV.     **IN THE ALTERNATIVE, A PROTECTIVE ORDER SHOULD BE ENTERED**

Pursuant to Fed. R. Civ. P. 26, where "good cause exists," courts have broad discretion to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: … requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(g). A district court has discretion to determine what constitutes good cause. *Jordan v. U.S. Dep't of Justice*, 315 F. Supp. 3d 584, 595 (D.D.C. 2018). In the alternative, or in addition to quashing the Subpoena, the Court should issue a Protective Order under Rule 26 ordering that Lockheed Martin not be required to respond to any of the Subpoena document requests or deposition topics.

### V.     **CONCLUSION**

For the reasons stated above, Non-Party Lockheed Martin Corporation respectfully requests that the Court enter an order quashing the Subpoena and/or protecting it from disclosure of its confidential, trade secret, and/or proprietary information. If, however, the Court determines that Lockheed Martin must produce the same, Lockheed Martin requests that it be given the appropriate amount of time to make said production and that a protective order be entered to protect Lockheed Martin's competitive and confidential interests.

Dated: November 20, 2018

Respectfully Submitted,

*/s/ Lyndsay M. Gorton*
Michael J. Songer (*Pro Hac Vice Application Forthcoming*)
Lyndsay A. Gorton (Bar No. 981959)
CROWELL & MORING LLP
1001 Pennsylvania Ave N.W.
Washington, D.C. 20004
(t) (202) 624-2500
(f) (202) 628-5116
MSonger@Crowell.com
LGorton@Crowell.com

*Counsel for Non-Party Lockheed Martin Corporation*

## CERTIFICATE OF CONFERENCE
## PURSUANT TO DISTRICT OF COLUMBIA LOCAL RULE 7(M) AND/OR
## MIDDLE DISTRICT OF FLORIDA LOCAL RULE 3.01(G)

I hereby certify that pursuant to D. C. Local Rule 7(m) and M.D. Fla. Local Rule 3.01(g), counsel for Lockheed Martin conferred with counsel for Raytheon via email on November 15 and 16, 2018 and via telephone call on November 20, 2018. Counsel for Raytheon stated that Raytheon does not consent to the relief requested in this Motion.

*/s/ Lyndsay M. Gorton*
Lyndsay A. Gorton

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of November, 2018, a true and correct copy of the foregoing Motion to Quash was filed in hardcopy in the District Court for the District of Columbia. I also certify that the foregoing document is being served this day on all counsel of record in the underlying Action identified on this Service List via Federal Express and email.

Dennis P. Waggoner
HILL WARD HENDERSON
101 E. Kennedy Blvd., Suite 7300
Tampa, FL 33602
(t) (813) 221-3900
(f) (813) 221-2900
Dennis.Waggoner@hwhlaw.com

Gregg F. LoCascio
Sean M. McEldowney
Thomas P. Weir
KIRKLAND & ELLIS LLP
655 Fifteenth Street N.W., Suite 1200
Washington, D.C. 20005
(t) (202) 879-5000
(f) (202) 879-5200
Gregg.LoCascio@Kirkland.com
Sean.McEldowney@Kirkland.com
Tom.Weir@Kirkland.com

*Counsel for Plaintiff Raytheon Company*

Richard Lee Barrett
Barrett, Chapman & Ruta PA
18 Wall Street
P.O. Box 3826
Orlando, FL 32802-3826
(t) (407) 839-6227
(f) (407) 648-1190
Lee@bcrlw.net

*Counsel for Defendant William Rebarick*

/s/ Lyndsay A. Gorton
Lyndsay A. Gorton

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| Raytheon Company,<br><br>    Plaintiff.<br>v.<br><br>William Rebarick,<br><br>    Defendant. | Case No. 6:18-cv-1308-RBD-DCI |

## [PROPOSED] ORDER

**THIS MATTER** having come before the Court on Motion by Non-Party Lockheed Martin Corporation ("Lockheed Martin"), for an order dismissing with quashing the Raytheon Company's Subpoena issued in Case No. 6:18-cv-01308-BCD-DCI (M.D. Fla.) under Fed. R. Civ. P. 26 and 45; and the Court having reviewed and considered the moving papers and any opposition thereto; and for good cause shown;

**IT IS** on this _____ day of _____, 2018,

**ORDERED** that the motion to dismiss is hereby **GRANTED** in favor of Lockheed Martin, and it is further

**ORDERED** that the Subpoena issued by Raytheon Company is **QUASHED** in its entirety.

_____
UNITED STATES DISTRICT JUDGE

Copies to All Counsel of Record